IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. LONG, III and LONG HAULING & EXCAVATION, INC., )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>EQUICROSS, INC., and AIRUS MEDIA, INC., )<br>)<br>)<br>Defendants. ) | Civil Action No. 13-0061 Erie<br><br>District Judge Nora Barry Fischer<br>Chief Magistrate Judge Lisa Pupo Lenihan |

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion to Enforce Injunction and Settlement Agreement (ECF No. 29) filed by Defendants EquiCross and Airus Media, Inc. (collectively, "EquiCross" or "Defendants") be granted.

**II.    REPORT**

    **A.     Factual Background**

The claims in this action stem from the dissolution of a business relationship between Defendant EquiCross and Plaintiffs William Long III and Long Hauling & Excavation, Inc. (collectively, "Long" or "Plaintiffs"). From approximately 2009 to 2012, Long sold goods on commission for EquiCross, acting first as an independent contractor, and later as an employee. (ECF No. 1 at ¶¶ 12-13, 19, 25). Following his termination, Long filed the instant action seeking recovery of unpaid sales commissions and a declaration that Long was not bound by the terms of various restrictive covenants that he had entered into with EquiCross. (ECF No. 1). EquiCross

responded by accusing Long of misappropriating confidential business information and engaging in competitive activities in violation of those same restrictive covenants. (ECF No. 8).

On September 10, 2013, Magistrate Judge Susan Paradise Baxter conducted a settlement conference at which the parties arrived at an amicable resolution of all outstanding claims. (ECF No. 24). Specifically, EquiCross agreed to make a $25,000 cash payment to Long in consideration of the unpaid commissions, and the parties agreed to engage a mutually selected third-party to perform a forensic analysis and develop a protocol for "data destruction on the electronic equipment owned by plaintiff." (ECF No. 24 at p. 2). Long indicated to Magistrate Judge Baxter that he only possessed three electronic devices containing EquiCross data: "a laptop, a desktop, and a smart phone." (Id.). The parties also agreed to a number of temporary restrictions on Long's competitive business activities. (Id. at 3).

The parties subsequently executed a written settlement agreement ("Settlement Agreement") on September 20, 2013. (ECF No. 25). With respect to electronically stored data, the Settlement Agreement contained the following provision:

> Long shall retain the services of a reputable and reliable third-party computer forensics consultant ("Computer Consultant") at the expense of Long and subject to approval by EquiCross, to assist the Parties in identifying and/or locating any and all EquiCross Material that is comprised of electronically stored information ("ESI"), regardless of where or how such information is maintained. Within forty-five (45) days of the Effective Date of this Agreement, the Computer Consultant shall develop a Data Search, Retrieval and Destruction Protocol ("Data Protocol"), subject to review and approval by EquiCross. The Data Protocol, once prepared and approved by EquiCross, will automatically become a part of this Agreement and will be included herein as Exhibit A. Once the Data Protocol has been approved by EquiCross and implemented by Long's Computer Consultant, the Computer Consultant will provide EquiCross with a sworn affidavit describing how each step of the approved Data Protocol was implemented and certifying that it has been completed ("Consultant Affidavit"). In the event the Consultant Affidavit identifies any additional device(s) on which EquiCross Material may exist, but which the Computer Consultant was not

2

> provided opportunity or access to examine or inspect, EquiCross reserves the right to seek further relief from the Court.

(ECF No. 26-1 at ¶ 4).

On September 23, 2013, United States District Judge Nora Barry Fischer approved the Settlement Agreement and entered a Stipulated Injunction and Order ("Injunction Order") (ECF No. 26). Judge Fischer's order reflected the same obligations as the Settlement Agreement:

> In conformity with the Agreement, Long shall retain the services of a reputable and reliable third-party Computer Consultant, at the expense of Long and subject to approval by EquiCross. The Computer Consultant shall develop and implement a Data Protocol, subject to the review and approval by EquiCross, to assist the Parties in identifying and/or locating any and all EquiCross Material that is comprised of electronically stored information ("ESI"), regardless of where or how such information is stored or maintained.
>
> Within forty-five days of the effective date of the Agreement, unless the parties agree otherwise, the Computer Consultant shall implement the Data Protocol approved by EquiCross, and shall provide EquiCross with a sworn affidavit describing how each step of the approved Data Protocol was implemented and certifying that it has been completed ("Consultant Affidavit").

(ECF No. 27 at ¶¶ 2-3). Neither the Settlement Agreement nor the Injunction Order restricted the scope of the Computer Consultant's investigation to any specific electronic devices.

With EquiCross' approval, Long selected RVM, Inc. to serve as the Computer Consultant. (ECF No. 29 at ¶ 15). On October 14, 2013, Long provided EquiCross with a draft Data Protocol for review. (ECF No. 29-1). The proposed Data Protocol declared that Long possessed only "three (3) devices that could conceivably contain EquiCross Material in electronic format: a desktop computer ("Desktop"), a laptop computer ("Laptop") and an iPhone." (ECF 29-1). In reliance on this declaration, the Data Protocol proposed that the Computer Consultant would simply erase each of those devices and return them to their factory settings, ensuring that any confidential information would necessarily be deleted. Id. The

3

protocol contained no recommendations or procedures designed to elicit whether Long possessed any other devices containing confidential data or whether he might have copied or transferred EquiCross' confidential data from those three devices. Id.

On November 20, 2013, Defendants filed the instant motion to enforce the Settlement Agreement and the Injunction Order. (ECF No. 29). The motion was initially referred to Magistrate Judge Baxter. (ECF No. 31). However, following an attempt to resolve the motion through settlement, the parties requested that Magistrate Judge Baxter recuse in light of information shared by the parties during the negotiations. Consequently, the motion was transferred to the undersigned for a report and recommendation on January 9, 2014. (ECF No. 37). This matter is now ripe for review.

### B. Standard of Review

The standard of review for a motion to enforce a settlement agreement is similar to the standard applicable to a motion for summary judgment. See Tiernan v. Defore, 923 F.2d 1024, 1031 (3rd Cir. 1991); LG Elecs. Inc. v. ASKO Appliances, Inc., 2012 WL 2365901, *1 (D. Del. June 21, 2012) ("A motion to enforce a settlement agreement closely resembles a motion for summary judgment and employs a similar standard of review."). Thus, in order to prevail on a motion to enforce a settlement, the movant must demonstrate that there are no disputed material facts regarding the terms and existence of the contract. Tiernan, 923 F.2d at 1031-32. A settlement agreement may be summarily enforced without the need for a hearing "where there is no dispute as to the existence of [the] settlement." Tiernan, 923 F.2d at 1031 (emphasis added) (citing Petty v. Timken Corp., 849 F.2d 130, 132 (4th Cir. 1988)).

C. **Discussion**

The crux of the instant dispute centers upon the breadth of the Data Protocol mandated by the Settlement Agreement. In crafting the draft Data Protocol, Long took the position that the scope of the requisite forensic analysis was restricted to the three electronic devices discussed during the settlement conference on September 10, 2013. He contends that his attestation before Judge Baxter (to the effect that those three devices were the only devices in his possession that might contain EquiCross data) represents a binding manifestation of the parties' intent with respect to the subsequent written Settlement Agreement. He concludes that, by agreeing to delete the entire contents of each of those three devices, rather than forcing the Computer Consultant to selectively comb through each device looking for confidential information, he has already gone "well-beyond" his obligations pursuant to the agreement. (ECF No. 30 at p. 4).

EquiCross responds that the Settlement Agreement requires the Computer Consultant to do more than simply erase the data on whatever devices Long admits to owning; rather, it must also forensically examine those devices to determine whether confidential data might have been previously copied or transferred to *other* devices or accounts. EquiCross relies entirely on the plain language of the Settlement Agreement and the Injunction Order, each of which describes the scope of the Computer Consultant's forensic obligations in broad terms and contains no reference to the three devices discussed at the settlement conference.

In resolving this dispute, it is well-established that a settlement agreement, like any contract, must be construed according to the "intention of the parties at the time of contracting." Fineman v. Armstrong World Industries, Inc., 980 F.2d 171, 215-16 (3rd Cir. 1992); see also Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc., 821 F.Supp. 370, 372-73 (E.D. Pa. 1993) ("Settlement agreements are contracts between the parties and contract principles are

generally applicable to their construction."). In Pennsylvania, courts primarily determine and give effect to the contracting parties' intent by applying the "plain meaning rule." Department of Trans. v. Manor Mines, Inc., 565 A.2d 428, 432 (Pa. 1989).[1] Thus, "when a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Id. at 432 (citing, e.g., Steuart v. McChesney, 444 A.2d 659 (1982)).  As explained by the Third Circuit:

> [T]he intent of the parties to a written contract is contained in the writing itself.  Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence[;] instead, the meaning of a clear and unequivocal written contract must be determined by its contents alone.

Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 91-92 (3rd Cir. 2001) (applying Pennsylvania law) (internal quotations and citations omitted).

After carefully reviewing the pertinent language, the undersigned agrees with EquiCross that the Settlement Agreement clearly and unequivocally requires a more thorough forensic investigation than that described in Long's proposed Data Protocol.  As an initial matter, despite Long's contention that the scope of data destruction contemplated by the Settlement Agreement is restricted to only three devices, the Settlement Agreement itself contains no reference to those devices.  As noted above, where the parties have executed an unambiguous, fully integrated written contract, the meaning of that contract is determined by the writing itself.  Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1010 (3rd Cir. 1980) (noting that "preliminary negotiations, conversations and verbal agreements" are "superseded by the subsequent written contract.") (internal quotations and citations omitted); Manor Mines, 565 A.2d at 432. Contrary to Long's assertion, the Settlement Agreement unambiguously directs the Computer Consultant to attempt to "identify and locate" confidential information "regardless of where or how such information is stored."  In order to perform this investigative function, the

---

[1] The Settlement Agreement explicitly provides that it "shall be governed by and construed in accordance with Pennsylvania law, without regard to conflict of laws principles." (ECF No. 25-1 at ¶ 17).

Computer Consultant's efforts must necessarily go beyond simply deleting the materials that Long hands over voluntarily.

The Settlement Agreement further provides for the possibility that the Computer Consultant might discover additional devices during the course of its investigation, reserving the right for EquiCross "to seek further relief from the Court" to obtain and examine such devices. This provision would be rendered meaningless if the scope of the Computer Consultant's investigation was restricted to simply deleting the data on the devices already identified by Long. See, e.g., Mowry v. McWherter, 74 A.2d 154, 158-59 (Pa. 1950) (describing the "well settled" principle that "[i]ndividual clauses and particular words" in a contract" must be construed so that "all parts of the writing, and every word of it, if possible, will be given effect.").

Finally, the Settlement Agreement explicitly provides that the Data Protocol is subject to "review and approval by EquiCross." In light of the current dispute, EquiCross clearly has not given the requisite approval.

In sum, the undersigned agrees with EquiCross that the plain language of the Settlement Agreement requires the Computer Consultant to develop a Data Protocol that, at a minimum, sets forth a procedure directed towards "identifying and/or locating" any and all EquiCross Material in Long's possession, "regardless of where or how such information is stored or maintained." While the Court commends Long's voluntary efforts to "expand his obligations in order to achieve finality," it notes that such efforts must comport with the obligations described within the four corners of the Settlement Agreement. Accordingly, the Court will recommend that EquiCross' motion to enforce be granted with respect to the deficiencies identified in the proposed Data Protocol.[2]

---

[2] EquiCross has also requested that the Court award fees and costs associated with the instant motion and extend the duration of the restrictions set forth in Paragraphs 4 and 5 of the Settlement Agreement. However, it is the Court's

## III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Enforce Injunction and Settlement Agreement (ECF No. 29) be granted. It is further recommended that Long must provide a new draft Data Protocol from the Computer Consultant within twenty (20) days of any final order adopting this report and recommendation.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: February 27, 2014

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Counsel of Record
*Via ECF Electronic Mail*

---

recommendation that Long's conduct in adopting a non-frivolous – albeit unsuccessful – position with respect to the Settlement Agreement's requirements does not rise to the level of vexatious behavior or bad faith necessary to support such an award. See, e.g., Walther and Cie v. U.S. Fidelity & Guaranty Co., 397 F.Supp. 937, 946-47 (D.C. Pa 1975) (declining to award attorneys' fees to a successful plaintiff on a motion to enforce a settlement agreement after concluding that the defendant's conduct did not amount to bad faith or vexatious, wanton, or oppressive behavior); Elliot v. Marinos, 2013 WL 4400162, *3 (W.D. Pa. Aug. 15, 2013) (award of attorneys' fees for motion to enforce settlement appropriate where "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (internal quotations omitted).